Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                          1:20-cv-02161

| | |
|---|---|
| Joanne Ferreri and Priscilla Rumnit, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| - against - | Class Action Complaint |
| Chobani, LLC, | |
| Defendant | |

Plaintiffs by attorneys allege upon information and belief, except for allegations pertaining to plaintiffs, which are based on personal knowledge:

1.    Chobani, LLC ("defendant") manufactures, distributes, markets, labels and sells yogurt products purporting to be flavored only with vanilla under the Chobani brand ("Products").

2.    The Products are available to consumers from retail and online stores of third-parties and are sold in sizes including 5.3 OZ.

3.    The front label representations include the brand, "Greek Yogurt," "0 % Milk Fat," "Vanilla," "Blended," "Only Natural Ingredients, "No GMO Ingredients" and pictures of vanilla

beans and the vanilla flower.



4.     The unqualified, prominent and conspicuous representations as "Vanilla" is false, deceptive and misleading because the Product contains non-vanilla flavors which imitate and extend vanilla but are not derived from the vanilla bean, yet these flavors are not disclosed to consumers as required and expected.

I.     Vanilla is Constantly Subject to Efforts at Imitation Due to High Demand

5.     Among yogurt flavors, vanilla is a perennial favorite, and is the third-most preferred according to a recent survey by FONA International, a flavor company.[1]

6.     The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the prized flavor commonly known as vanilla, defined by law as "the total sapid and odorous principles extractable from one-unit weight of vanilla beans."[2]

7.     Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or

---

[1] What's Next for Yogurt: A Global Review, FONA International
[2] 21 C.F.R. §169.3(c).

for its desirable aroma qualities."[3]

8.    Though the Pure Food and Drugs Act of 1906 ("Pure Food Act") was enacted to "protect consumer health and prevent commercial fraud," this was but one episode in the perpetual struggle against those who have sought profit through sale of imitation and lower quality commodities, dressed up as the genuine articles.[4]

9.    It was evident that protecting consumers from fraudulent vanilla would be challenging, as E. M. Chace, Assistant Chief of the Foods Division of the U.S. Department of Agriculture's Bureau of Chemistry, noted "There is at least three times as much vanilla consumed [in the United States] as all other flavors together."[5]

10.    This demand could not be met by natural sources of vanilla, leading manufacturers to devise clever, deceptive and dangerous methods to imitate vanilla's flavor and appearance.

11.    Today, headlines tell a story of a resurgent global threat of "food fraud" – from olive oil made from cottonseeds to the horsemeat scandal in the European Union.[6]

12.    Though "food fraud" has no agreed-upon definition, its typologies encompass an ever-expanding, often overlapping range of techniques with one common goal: giving consumers less than what they bargained for.

A.    Food Fraud as Applied to Vanilla

13.    Vanilla is considered a "high-risk [for food fraud] product because of the multiple

---

[3] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018.
[4] Berenstein, 412; some of the earliest recorded examples of food fraud include unscrupulous Roman merchants who sweetened wine with lead.
[5] E. M. Chace, "The Manufacture of Flavoring Extracts," Yearbook of the United States Department of Agriculture 1908 (Washington, DC: Government Printing Office, 1909) pp.333–42, 333 quoted in Nadia Berenstein, "Making a global sensation: Vanilla flavor, synthetic chemistry, and the meanings of purity," History of Science 54.4 (2016): 399-424 at 399.
[6] Jenny Eagle, 'Today's complex, fragmented, global food supply chains have led to an increase in food fraud', FoodNavigator.com, Feb. 20, 2019; M. Dourado et al., Do we really know what's in our plate?. Annals of Medicine, 51(sup1), 179-179 (May 2019); Aline Wisniewski et al., "How to tackle food fraud in official food control authorities in Germany." Journal of Consumer Protection and Food Safety: 1-10. June 11, 2019.

market impact factors such as natural disasters in the source regions, unstable production, wide variability of quality and value of vanilla flavorings," second only to saffron in price.[7]

14.    The efforts at imitating vanilla offers a lens to the types of food fraud regularly employed across the spectrum of valuable commodities in today's interconnected world.[8]

| Type of Food Fraud | Application to Vanilla |
|---|---|
| ➢ Addition of markers specifically tested for instead of natural component of vanilla beans | • Manipulation of the carbon isotope ratios to produce synthetic vanillin with similar carbon isotope composition to natural vanilla |
| | • Ground vanilla beans and/or seeds to provide visual appeal as "specks" so consumer thinks the product contains real vanilla beans, when the ground beans have been exhausted of flavor |
| ➢ Appearance of *more* and/or higher quality of the valued ingredient | • Caramel to darken the color of an imitation vanilla so it more closely resembles the hue of real vanilla[9] |
| | • Annatto and turmeric extracts in dairy products purporting to be flavored with vanilla, which causes the color to better resemble the hue of rich, yellow butter |
| ➢ Substitution and replacement of a high-quality ingredient with alternate ingredient of lower quality | • Tonka beans, though similar in appearance to vanilla beans, are banned from entry to the United States due to fraudulent use |
| | • Coumarin, a toxic phytochemical found in Tonka beans, added to imitation vanillas to increase vanilla flavor |

---

[7] Société Générale de Surveillance SA, ("SGS "), Authenticity Testing of Vanilla Flavors – Alignment Between Source Material, Claims and Regulation, May 2019.
[8] Kathleen Wybourn, DNV GL, Understanding Food Fraud and Mitigation Strategies, PowerPoint Presentation, Mar. 16, 2016.
[9] Renée Johnson, "Food fraud and economically motivated adulteration of food and food ingredients." Congressional Research Service R43358, January 10, 2014.

perception

| | |
|---|---|
| ➤ Addition of less expensive substitute ingredient to mimic flavor of more valuable component | • Synthetically produced ethyl vanillin, from recycled paper, tree bark or coal tar, to imitate taste of real vanilla |
| | • "to mix flavor materials together at a special ratio in which they [sic] compliment each other to give the desirable aroma and taste"[10] |
| ➤ Compounding, Diluting, Extending | • Combination with flavoring substances such as propenyl guaethol ("Vanitrope"), a "flavoring agent [, also] unconnected to vanilla beans or vanillin, but unmistakably producing the sensation of vanilla"[11] |
| | • "Spiking" or "fortification" of vanilla through addition of natural and artificial flavors including vanillin, which simulates vanilla taste but obtained from tree bark |
| ➤ Addition of fillers to give the impression there is more of the product than there actually is | • Injection of vanilla beans with mercury, a poisonous substance, to raise the weight of vanilla beans, alleged in *International Flavors and Fragrances (IFF), Inc. v. Day Pitney LLP and Robert G. Rose,* 2005, Docket Number L-4486-09, Superior Court of New Jersey, Middlesex County |
| ➤ Ingredient List Deception[12] | • Subtle, yet deliberate misidentification and obfuscation of a product's components and qualities as they appear on the ingredient list |
| | ○ "ground vanilla beans" gives impression it describes unexhausted vanilla beans when actually it is devoid of |

---

[10] Chee-Teck Tan, "Physical Chemistry in Flavor Products Preparation: An Overview" in Flavor Technology, ACS Symposium Series, Vol. 610 1995. 1-17.

[11] Berenstein, 423.

[12] Recent example of this would be "evaporated cane juice" as a more healthful sounding term to consumers to identify sugar.

flavor and used for aesthetics

- o "natural vanilla flavorings" – "-ing" as suffix referring to something *like* that which is described
- o "Vanilla With Other Natural Flavors" – implying – wrongly – such a product has a sufficient amount of vanilla to characterize the food
- o "Natural Flavors" – containing "natural vanillin" derived not from vanilla beans but from tree pulp. When paired with real vanilla, vanillin is required to be declared as an artificial flavor
- o "Non-Characterizing" flavors which are not identical to vanilla, but that extend vanilla

15.    The "plasticity of legal reasoning" with respect to food fraud epitomize what H. Mansfield Robinson and Cecil H. Cribb noted in 1895 in the context of Victorian England:

> the most striking feature of the latter-day sophisticator of foods is his knowledge of the law and his skill in evading it. If a legal limit on strength or quality be fixed for any substance (as in the case of spirits), he carefully brings his goods right down to it, and perhaps just so little below that no magistrate would convict him.

> *The law and chemistry of food and drugs*. London: F.J. Rebman at p. 320.[13]

B.  The Use of Vanillin to Simulate Vanilla

16.    The most persistent challenger to the authenticity of real vanilla has been synthetic versions of its main flavor component, vanillin.

17.    First synthesized from non-vanilla sources by German chemists in the mid-1800s, vanillin was the equivalent of steroids for vanilla flavor.

18.    According to Skip Rosskam, a professor of vanilla at Penn State University and former head of the David Michael flavor house in Philadelphia, "one ounce of vanillin is equal to

---

[13] Cited in Sébastien Rioux, "Capitalist food production and the rise of legal adulteration: Regulating food standards in 19th-century Britain," Journal of Agrarian Change 19.1 (2019) at p. 65 (64-81).

a full gallon of single-fold vanilla extract."[14]

19.   Today, only 1-2% of vanillin in commercial use is vanillin obtained from the vanilla plant, which means that almost all vanillin has no connection to the vanilla bean.

20.   Nevertheless, disclosure of this powerful ingredient has always been required where a product purports to be flavored with vanilla. *See* Kansas State Board of Health, Bulletin, Vol. 7, 1911, p. 168 (cautioning consumers that flavor combinations such as "vanilla and vanillin…vanilla flavor compound," etc., are not "vanilla [extract] no matter what claims, explanations or formulas are given on the label.").

21.   Since vanilla is the only flavor with its own standard of identity, its labeling is controlled not by the general flavor regulations but by the standards for vanilla ingredients.

22.   This means that if a product is represented as being characterized by vanilla yet contains non-vanilla vanillin, the label and packaging must declare vanillin an artificial flavor. *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'."); *see also* 21 C.F.R. § 169.181(b), § 169.182(b) (Vanilla-vanillin flavoring and Vanilla-vanillin powder).

23.   This prevents consumers from being misled by products which may taste similar to real vanilla and but for consumer protection requirements, would be sold at the price of real vanilla.

II.   Flavor Industry's Efforts to Use Less Vanilla, Regardless of any Shortages

24.   The "flavor industry" refers to the largest "flavor houses" such as Symrise AG, Firmenich, Givaudan, International Flavors and Fragrances (including David Michael), Frutarom

---

[14] Katy Severson, Imitation vs. Real Vanilla: Scientists Explain How Baking Affects Flavor, Huffington Post, May 21, 2019.

and Takasago International along with the largest food manufacturing companies such as Unilever.

25.    The recent global shortage of vanilla beans has provided the flavor industry another opportunity to "innovate[ing] natural vanilla solutions…to protect our existing customers."[15]

26.    Their "customers" do not include the impoverished vanilla farmers nor consumers, who are sold products labeled as "vanilla" for the same or higher prices than when those products contained *only* vanilla.

27.    These efforts include (1) market disruption and manipulation and (2) the development of alternatives to vanilla which completely or partially replace vanilla.

A. Flavor Industry's Attempt to Disrupt Supply of Vanilla to Create a "Permanent Shortage"

28.    The flavor industry has developed schemes such as the "Sustainable Vanilla Initiative" and "Rainforest Alliance Certified," to supposedly assure a significant supply of vanilla at stable, reasonable prices.

29.    Contrary to their intention, these programs make vanilla less "sustainable" by paying farmers to destroy their vanilla and harvest palm oil under the pretense of "crop diversification."

30.    There have also been allegations that these programs use child and/or slave labor.

31.    Other tactics alleged to be utilized by these companies include "phantom bidding," where saboteurs claim they will pay a higher price to small producers, only to leave the farmers in the lurch, forced to sell at bottom dollar to remaining bidders.[16]

32.    The reasons for these counterintuitive actions is because they benefit from high vanilla prices and the use of less real vanilla.

33.    When less vanilla is available, companies must purchase the higher margin,

---

[15] Amanda Del Buono, Ingredient Spotlight, Beverage Industry, Oct. 3, 2016.
[16] Monte Reel, The Volatile Economics of Natural Vanilla in Madagascar, Bloomberg.com, Dec. 16, 2019.

proprietary, "vanilla-like" flavorings made with advanced technology and synthetic biology.

B. Use of Vanilla Compound Ingredients to Replace and Provide Less Vanilla

34.    Though flavor companies will not admit their desire to move off real vanilla, this conclusion is consistent with the comments of industry executives.

35.    According to Suzanne Johnson, vice president or research at a North Carolina laboratory, "Many companies are trying to switch to natural vanilla with other natural flavors [WONF] in order to keep a high-quality taste at a lower price," known as "Vanilla WONF."

36.    The head of "taste solutions" at Irish conglomerate Kerry urged flavor manufacturers to "[G]et creative" and "build a compounded vanilla flavor with other natural flavors."

37.    A compounded vanilla flavor "that matches the taste of pure vanilla natural extracts" can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans. The result is a greater consistency in pricing, availability and quality."[17]

38.    These compounded flavors exist in a "black box" with "as many as 100 or more flavor ingredients," including potentiators and enhancers, like maltol and piperonal, blended together to enhance the vanilla, allowing the use of less vanilla to achieve the intended taste.[18]

39.    The effort to replace vanilla with so-called Vanilla WONF started in the late 1960s, but the last 10 years have seen the proliferation of this ingredient.

C. Decline of Industry Self-Governance

40.    That high-level executives in the flavor industry are willing to boast of their stratagems to give consumers less vanilla for the same or greater price is not unexpected.

---

[17] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.
[18] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "That *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

41.    The once powerful and respected trade group, The Flavor and Extract Manufacturers Association ("FEMA"), abandoned its "self-policing" of misleading vanilla labeling claims and disbanding its Vanilla Committee.

42.    FEMA previously opposed industry efforts to deceive consumers but cast the public to the curb in pursuit of membership dues from its largest members, such as Unilever.

III. The Products are Misleading Because they Contain Non-Vanilla Flavor and/or Components

43.    The Product's designation of its characterizing flavor as "Vanilla" without any qualifying terms gives consumers the impression that its entire flavor (taste sensation and ingredient imparting same) is contributed by the characterizing food ingredient of vanilla beans. *See* 21 C.F.R. § 101.22(i)(1) (describing a food which contains no simulating artificial flavor and not subject to 21 C.F.R. § 101.22(i)(1)(i)-(iii)).

44.    Consumers expect that where a food is a part of a product name of a packaged food, that it contain that food in an amount sufficient to independently characterize the product.

45.    Federal regulations on this subject were implemented to establish standards, which when complied with by industry, will prevent consumers from being misled.

46.    For instance, foods labeled "strawberry shortcake," "vanilla herbal tea" or "apple pie," will be expected to contain amounts of the characterizing ingredients – strawberries, vanilla or apples – to independently characterize the food. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., "vanilla", in letters not less than one-half the height of the letters used in the name of the food, except that…").

47.    The front label of the Product is required to state "nonfat yogurt…in type of uniform

size, style, and color…accompanied by a declaration indicating the presence of any characterizing flavoring as specified in 101.22 of this chapter." *See* 21 C.F.R. § 131.206(f) ("Nomenclature.").

48.    The designation of a type of yogurt as "Vanilla" is understood by consumers to identify a product where (1) vanilla is the characterizing flavor, (2) vanilla is contained in a sufficient amount to flavor the product, (3) the flavor is derived from vanilla extract or vanilla flavoring and unexhausted vanilla beans, (4) no other flavors simulate, resemble, reinforce, or enhance flavoring from vanilla or permit less real vanilla to be used and (5) vanilla is the exclusive source of flavor.

49.    The representations are misleading because the ingredient list reveals the Product's flavoring owes to non-vanilla "Natural Flavors" in addition to vanilla, "Vanilla Extract."

<u>Ingredient List</u>

**Ingredients:** Nonfat yogurt (cultured pasteurized nonfat milk), cane sugar, water, fruit pectin, natural flavors, vanilla extract, guar gum, lemon juice concentrate.

Ingredients: Nonfat yogurt (cultured pasteurized nonfat milk), cane sugar, water, fruit pectin, natural flavors, vanilla extract, guar gum, lemon juice concentrate.

IV.    Misleading Not to Declare Non-Vanilla Flavors on Front Panel

50.    Flavors are only required to be declared on the front label of a product if they simulate, resemble, enhance or extend the characterizing flavor.

51.    The Product's front label does not declare the presence of "natural flavors" and only identifies "vanilla."

52.    Since the "Natural Flavors" are not from vanilla beans and there is no plausible basis

11

to contain flavoring unrelated to vanilla, i.e., the "natural flavors" are not providing a chocolate, strawberry or more "yogurt-y" flavor, the Product's labeling must, at a minimum, indicate the presence of these "natural flavors." *See* 21 C.F.R. § 101.22(i)(1)(iii) (describing labeling for a situation where a "food contains both a characterizing flavor from the product whose flavor is simulated and *other natural flavor* which simulates, resembles or reinforces the characterizing flavor." (emphasis added)).

53.    If the amount of the characterizing vanilla flavor is sufficient to independently characterize the Product, the front label could be "[Vanilla] With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii); *see also* 21 C.F.R. § 101.22(i)(1) ("introductory text" describing scenario where food contains "no artificial flavor which simulates, resembles or reinforces the characterizing flavor," and none of the sub-paragraphs of 21 C.F.R. § 101.22(i)(1) apply).

54.    If the amount of the characterizing vanilla flavor is insufficient to independently characterize the food, the front label could be "[Vanilla] Flavored With Other Natural Flavor." *See* 21 C.F.R. § 101.22(i)(1)(iii) referring to "paragraph (i)(1)(i) of this section"; *see also* 21 C.F.R. § 101.22(i)(1)(i).

A.    Even if the Front Label Contains the Words "Flavored" or "Other Natural Flavors," the Representations Would Still Be Misleading

55.    If the Product's front label stated "vanilla with other natural flavors" or "vanilla flavored with other natural flavors," the representations would still be misleading.

56.    By adding "Other Natural Flavors" to a standardized exclusively vanilla ingredient – vanilla extract or vanilla flavoring – consumers are not receiving the same high quality and expensive ingredient and are unaccustomed to such a pairing.

57.    Consumers would be deceived because such representations fail to specify how much of the "Vanilla With Other Natural Flavors" is from vanilla vis-à-vis non-vanilla natural flavors.

Exhibit A, Letter from FDA to Ernie Molina, Warner-Jenkinson Company of California, January 17, 1980 ("the general principles of 21 CFR 102.5 should apply" and proportions of each component should be disclosed, i.e., "contains 50% vanilla extract and 50% non-vanilla flavors" or otherwise disclose the proportions.).

58.    Defendant may offer several reasons for failing to declare flavoring ingredients or components on a front label, all of which are not applicable, unsupported by law and misleading to consumers.

B.    Unsupported Rational #1: "Non-Characterizing" Flavors are Not Required to be Declared

59.    A common justification for failing to declare non-vanilla flavors on a front label is by describing them as "non-characterizing" for vanilla.

60.    This novel method of "food fraud" was devised by David Michael & Co., Inc., currently part of International Flavors & Fragrances ("IFF"), with development of their *Vanguard* "flavoring system" for vanilla products in the late 1970s.[19]

61.    *Vanguard* was described as a "flavorless" "natural flavor enhancer" that "contain[ed] no vanilla, vanillin, ethyl vanillin, or any artificial flavor."

62.    *Vanguard* consisted of "blend[s] of dozens of plant extractives, roots, and botanicals, all natural ingredients found on the GRAS list."

63.    David Michael touted this ingredient as a "vanilla replacer," able to reduce the amount of vanilla by half, not requiring front label changes and with have no effect on taste.

64.    This sophistry was rejected by the FDA because the criteria for disclosing the source of a product's characterizing flavor is not so narrow to require that a non-vanilla flavor must simulate or be chemically identical to vanilla.

---

[19] Developed initially for use in ice cream but expanded to other foods.

65.     Flavors not from the characterizing food ingredient of vanilla are still required to be declared in the front label declaration as long as they resemble, reinforce and extend the characterizing vanilla flavor, even if they do not taste identical.

66.     Defendant knows consumers will pay more for the Products because their front label does not state "vanilla flavored," "vanilla flavored with other natural flavors" or a variation thereof.

C.    Unsupported Rationale #2: Non-Vanilla Flavors Fulfill Other Roles, Exempting Them From Front Label

67.     Non-flavor purposes of a flavor include (1) increasing sweetness without adding caloric sweeteners, (2) masking non-desirable off-flavors caused by other ingredients and (3) "rounding out" other notes and ancillary flavors.

68.     Examples of ingredients which are known to require "masking flavors" are non-caloric sweeteners like Stevia ("bitter notes most often described as a licorice off-taste") and pea proteins ("grassy, beany, earthy, bitter and chalky").[20]

69.     Masking flavors are claimed to work "in the background with the characterizing notes, elevating them to their true potential" and "subdu[ing] off flavors from other ingredients…allowing the characterizing flavor to shine."[21]

70.     Therefore, even if the Product's "Natural Flavors" were determined to be masking flavors, their presence would be relevant to their front label flavor designation.  *See* 21 C.F.R. § 101.22(i)(1)(iii) (describing how "other natural flavor which simulates, resembles or reinforces the characterizing flavor" is required to be disclosed).

71.     Describing a flavor as "rounding out" another flavor is a legitimate-sounding yet

---

[20] Robby Gardner, Last Bite: Flavor-Masking Stevia, May 24, 2011, Nutritional Outlook;  Jeff Gelski, Eliminating the pea flavor in pea protein, February 21, 2018, Food Business News.
[21] Donna Berry, Modifying Flavor in Dairy Foods, April 11, 2018, Food Business News.

meaningless rationale for excluding such flavor from the front label.

72.    "Rounding out" is an amorphous concept used to refer to one flavor's ability to enhance a food's characterizing flavor, which meets the criteria for being part of the flavor designation.[22]

73.    If the Product's "Natural Flavors" were determined to "round out" the vanilla flavor, and the definition of round out is to bring to completion, as in "to strengthen or complete the vanilla flavor profile," they would still be required to be declared.

D.    Unsupported Rationale #3: The "Natural Flavors" contain "Natural Vanillin"

74.    Many dairy products, especially yogurt, require the use of added vanillin due to the heat processing which occurs and the high protein content.

75.    To overcome these issues, vanillin is typically added in addition to vanilla extract or vanilla flavoring.

76.    The vanillin may be a part of a "Vanilla With Other Natural Flavors" ingredient or separately designated as "natural flavors."

77.    The Product's "Natural Flavors" contain vanillin from a natural source and made through a purportedly natural process, yet not derived from vanilla.

78.    The front label is misleading by representing the Products as "Vanilla" without disclosing the presence of non-vanilla vanillin.

79.    The use of vanilla extract and/or vanilla flavoring and a "natural flavors" ingredient that contains vanillin would not obviate the need for truthful disclosures that the Product's flavor is not exclusively from vanilla beans.

---

[22] *See* Butter's Got Cheese's Back: Part One, October 17, 2014, Edlong.com 1.   ("Our dairy expertise has shown us that butter flavor complements processed and cheddar cheese profiles by rounding out the named profile and adding a more fatty taste.").

80.     The "fortification" of vanilla with vanillin is one of the oldest and most deceptive ways by which consumers are misled as to their purchase. was one of the reasons standards of identity for vanilla were promulgated.

81.     Prior to the enactment of standards under the Federal Food Drugs & Cosmetic Act ("FFDCA") during the era of the "Pure Food Laws," Notices of Judgment were regularly issued against manufacturers who passed off imitation vanilla products:

> Misbranding was alleged for the further reason that the product was labeled and branded so as to deceive and mislead the purchaser thereof, in that said label was calculated and intended to create the impression and belief in the mind of the purchaser that the product was a genuine vanilla extract, whereas, in fact, it was a mixture of vanilla extract, vanillin, and coumarin, artificially colored with caramel.

> Notice of Judgment No. 2241, Adulteration And Misbranding of…Vanilla Extract, United States Department of Agriculture, W. M. Hays, Acting Secretary, Washington, D.C., January 23, 1913.

82.     To prevent consumer deception, "standards of identity for vanilla extract (21 CFR 169.175) and vanilla flavoring (21 CFR 169.177) do not provide for the use of vanillin" and "vanillin may not be used to make natural vanilla flavors in such standardized foods." Exhibit B, FDA Letter, Ferre-Hockensmith to Richard Brownell, Jr., April 19, 2005, pp. 1-2; *see* 21 C.F.R. § 169.175(a)(1)-(5) (listing glycerin, propylene glycol, sugar, dextrose and corn sirup as only optional ingredients for vanilla extract).

83.     However, the standards of identity for vanilla products allow for vanillin to be added to vanilla extract with the disclaimer "contains vanillin, an artificial flavor (or flavoring)." *See* Vanilla-vanillin extract at 21 C.F.R. § 169.180(b) ("The specified name of the food is 'Vanilla-vanillin extract _-fold' or '_-fold vanilla-vanillin extract', followed immediately by the statement 'contains vanillin, an artificial flavor (or flavoring)'.").

84.     Technological developments in the production of vanillin have enabled and emboldened companies to mislead consumers, by supplying a trace of vanilla extract, boosted by

vanillin.

85.    To circumvent the safeguards against consumer deception, producers of vanillin have sought to have this "new" vanillin be deemed a "natural flavor."

86.    Vanillin produced through a natural process, *viz*, fermentation, may be designated as "'natural flavor' or 'contains natural flavor'" in the context of the general flavor regulations at 21 C.F.R. § 101.22.  Exhibit C, FDA Letter, Ferre-Hockensmith to Richard Brownell, Jr., August 5, 2008, p. 2; Exhibit D, FDA Letter, Ferre-Hockensmith to Betsy D. Carlton, Ph.D., October 8, 2004 (the common or usual name of vanillin derived through a natural fermentation process is "vanillin" though it may be identified as "'vanillin derived naturally through fermentation' elsewhere on your product label.").

87.    Vanillin can be considered a "natural flavor" as long as "all ingredients that are included in the final product are derived by a natural process."

88.    If naturally produced vanillin were added separately to another finished food, it could be listed in the ingredients as "'vanillin' or 'natural flavor' but it should not be done in a way to imply that it is a 'natural vanilla flavor' because it is not derived from vanilla beans."  Exhibit E, FDA Letter, Negash Belay to Agneta Weisz, October 10, 2008; Exhibit F, FDA Letter, Singh to Anthony Filandro, July 9, 1991 (naturally produced "vanillin would not qualify as 'natural vanillin,' as defined in 21 CFR 101.22(a)(3), because the vanillin is not obtained from vanilla beans, whose flavor it simulates.").

89.    Naturally produced vanillin may be designated as "natural flavor" only outside the context of the standardized vanilla ingredients "under sections 169.180, 169.181, and 169.182 in 21 CFR."  Exhibit C, FDA Letter, Ferre-Hockensmith to Richard Brownell, Jr., August 5, 2008, p. 2.

90.    Use of the term "natural flavor" on the Product's ingredient list misleads consumers and implies it is a "natural vanilla flavor" because the front label only discloses vanilla, so reasonable consumers will expect its source to be vanilla beans. Exhibit G, FDA Letter, Margaret-Hanna Emerick to Richard Brownell, February 25, 2016 (ingredient listing on food containing vanillin obtained by natural process can be "'vanillin,' 'natural flavor,' or 'contains natural flavor.'").

V.    Misleading to Claim "Only Natural Ingredients" and "Only non-GMO Ingredients"

91.    Vanillin produced by a natural fermentation process is also produced using transgenics or "recombinant DNA."[23]

92.    This entails synthetic genetic code inserted into the yeast, which undergoes a fermentation process that forces the yeast to biosynthesize vanillin.

93.    It is false and misleading to represent the Products as not containing genetically modified organisms because the vanillin is produced using a method which is equivalent to producing GMOs.[24]

94.    To the extent vanillin made through a natural fermentation process produces a "natural flavor," reasonable consumers are misled because the Product states "Only Natural Ingredients" and is marketed as not containing GMOs.

VI.    Conclusion

95.    Defendant's representations of the Product are designed to – and does – deceive, mislead, and defraud consumers.

---

[23] Institute for Agriculture & Trade Policy, From GMO to SMO: how synthetic biology evades regulation, August 7, 2014.
[24] Rich McEachran, Creators defend vanilla flavour made using synthetic biology, The Guardian, May 28, 2015.

96.   Defendant has sold more of the Products and at higher prices per unit than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

97.   The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

98.   The value of the Product that Plaintiffs purchased and consumed was materially less than its value as represented by defendant.

99.   Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for it.

100.  The Product contains other representations which are misleading and deceptive.

101.  As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $3.59 per 5.3 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

<u>Jurisdiction and Venue</u>

102.  Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

103.  Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

104.  Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

105.  This is a reasonable assumption because defendant's Products are sold in thousands of stores across the country and have been sold bearing the allegedly misleading claims for at least

three years.

106.   Plaintiff Ferreri is a citizen of New Jersey.

107.   Defendant is a Delaware limited liability company with a principal place of business in Norwich, Chenango County, New York and is a citizen of New York and upon information and belief, at least one member of defendant is not a citizen of New York.

108.   This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

109.   Venue is proper because plaintiff Rumnit and many class members reside in this District and defendant does business in this District and State.

110.   A substantial part of events and omissions giving rise to the claims occurred in this District.

<u>Parties</u>

111.   Plaintiff Ferreri is a citizen of Millington, Morris County, New Jersey.

112.   Plaintiff Rumnit is a citizen of New York, New York County, New York.

113.   Defendant Chobani, LLC is a Delaware limited liability company with a principal place of business in Norwich, New York, Chenango County and some of its members reside in states other than New York.

114.   During the relevant statutes of limitations, plaintiffs purchased the Products within their districts and/or States for personal consumption in reliance on the representations.

<u>Class Allegations</u>

115.   The classes will consist of all purchasers of the Product in New York, the other 49 states and a nationwide class, during the applicable statutes of limitations.

116.  Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiffs and class members are entitled to damages.

117.  Plaintiffs' claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

118.  Plaintiffs are adequate representatives because their interests do not conflict with other members.

119.  No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

120.  Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

121.  Plaintiffs' counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

122.  Plaintiffs seek class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

123.  Plaintiffs incorporate by reference all preceding paragraphs.

124.  Plaintiffs and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

125.  Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

126.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

127.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

128.  Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

129.  Plaintiffs incorporate by reference all preceding paragraphs.

130.  Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Products.

131.  Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

132.  Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

133.  This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

134.  The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

135.  Plaintiffs and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

136.  Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

137.  Plaintiffs incorporate by reference all preceding paragraphs.

138.  The Products were manufactured, labeled and sold by defendant and warranted to Plaintiffs and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

139.  Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

140.  This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

141.  Plaintiffs provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

142.  Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years.

143.  The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

144.  Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Fraud

145.   Plaintiffs incorporate by reference all preceding paragraphs.

146.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products contain sufficient amounts of the highlighted ingredient, vanilla, to independently characterize the taste or flavor of the Products, did not contain other flavor components which simulate, resemble or reinforce the characterizing flavor and only contained flavor from vanilla.

147.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label when it knew this was not true.

148.   Plaintiffs and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

149.   Plaintiffs incorporate by reference all preceding paragraphs.

150.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiffs and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiffs demand a jury trial on all issues.

   **WHEREFORE**, Plaintiffs pray for judgment:

1.   Declaring this a proper class action, certifying Plaintiffs as representatives and undersigned as counsel for the class;

2.   Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4.  Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiffs' attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   March 10, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*

1:20-cv-02161
United States District Court
Southern District of New York

Joanne Ferreri and Priscilla Rumnit, individually and on behalf of all others similarly situated,

Plaintiffs,

- against -

Chobani, LLC,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
   Tel: (516) 303-0552
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  March 10, 2020

/s/ Spencer Sheehan
Spencer Sheehan